CASE NO. 22-1010

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TIMOTHY KING,

    Plaintiff,

and

STEFANIE LYNN JUNTTILA,

    Interested Party-Appellant,

v.

GRETCHEN WHITMER; JOCELYN BENSION; CITY OF DETROIT, MI,

    Defendants /Appellees.

Appeal from the United States District Court
Eastern District of Michigan
Civil Case No. 2:20-cv-13134

**INTERESTED PARTY-APPELLANT'S
MOTION TO STAY DISTRICT COURT'S ORDER TO REPORT APPELLANT TO
STATE BAR DISCIPLINARY BOARDS AND/OR GRIEVANCE COMMISSIONS AND
COMPELLING APPELLANT TO ATTEND CONTINUING LEGAL EDUCATION
PENDING APPEAL**

**CERTIFICATE OF SERVICE**

Now comes Interested Party-Appellant, STEFANIE LYNN JUNTTILA, *in propria persona*, and for her Motion to Stay the District Court's Order to Report Appellant to State Bar Disciplinary Boards and/or Grievance Commissions and Compelling Appellant to Attend Continuing Legal Education Pending Appeal, states as follows.

**1.** This motion is filed pursuant to and in compliance with the Federal Rules of Appellate Procedure (FRAP), including, *inter alia*, FRAP 27(a) and (b); Sixth Circuit Rule (6 Cir. R.) 27; and 6 Cir. Internal Operating Procedures (I.O.P.) 27.

**2.** This motion respectfully requests the Court to Stay enforcement of the non-monetary aspects of the underlying judgment being appealed.

**3.** The District Court ordered the clerk to send a copy of its opinion awarding sanctions against Appellant to various disciplinary bodies "for investigation and possible suspension or disbarment"; and ordered Appellant to complete various CLE courses offered by non-partisan organizations. See District Court's Opinion, RE 172, Page ID #6998-99.

**4.** The District Court has already stayed the monetary award portion of its sanctions order, yet, left in place those parts of its order reporting to disciplinary bodies and compelling behavior and conduct on the part of Appellant, and also one which, unlike a sum of money changing hands, cannot be undone. See District Court's Opinion, RE 179, Page ID #7168.

**5.** Appellant has not moved for this relief in the District Court for several reasons. First, given the District Court's delay in fixing the amount of the fees awarded—a necessary prerequisite to the prosecution of this appeal as a jurisdictional matter—it would not have been possible for the District Court and this Court both to receive full briefing and issue a decision in ordinary course in advance of the February 25, 2021, deadline imposed by the District Court. See, e.g., *Carter v. Hickory Healthcare Inc.*, No. 16-4233, 2017 WL 5185358, at *1 (6th Cir. Jan. 6, 2017)

1

(unpublished) (holding no jurisdiction until amount of fees is fixed unless there is also an appeal on the merits pending (citing *Morgan v. Union Metal Mfg.*, 757 F.2d 792, 795-96 (6th Cir. 1985); *M & C Corp. v. Erwin Behr GmbH & Co.*, 289 F. App's 927, 932 (6th Cir. 2008))); *see Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 993 (6th Cir. 2012).  Second, the timing of the District Court's order requires, as noted in the previous point, the imposition and enforcement of sanctions against the Appellant that forces her to comply with at least part of the District Court's "sanctions order".  To the extent that the District Court threatened to report Appellant to grievance and disciplinary boards and also to attend the aforementioned continuing legal education classes *before* this Court has (and indeed will have had) an opportunity to fully consider the merits of the appeal of the sanctions award *in toto*, means that in effect the District Court's opinion and order is being realized and enforced, i.e., executed, *with no real chance* for Appellant to challenge it or for this Court to even consider the merits of the District Court's sanctions and the extent to which any of them are even warranted.  *See Walker v. Lockhart*, 678 F.2d 68, 70 (8th Cir. 1982) (recognizing district court actions can, in evincing a view on the merits, render futile first seeking a stay from the district court).

**6.**  Finally, as to this latter point, it at least *appears* that the District Court is able to retaliate, or at least continue to pursue the sanctions against Appellant, precisely because Appellant is challenging the District Court's opinion.  This Court has noted that such situations should not be allowed because it makes it appear that the district court is retaliating against the appellants for pursuing an appeal.  See, e.g., *Webster v. Sowders*, 846 F.2d 1032, 1040 (6th Cir. 1988).

**7.**  In the same vein, the District Court has already stayed the monetary awards portion of its judgment.  It makes no sense to allow the District Court to report Appellant to grievance commissions and disciplinary bodies, and to force Appellant to attend continuing legal education

courses where these are clearly more punitive and directly impact Appellant's practice and livelihood and indeed her Due Process and First Amendment rights.  Reporting Appellant to a grievance commission or disciplinary body *while* Appellant is seeking an appeal of the District Court's judgment to challenge whether sanctions are even warranted prevents Appellant from being able to fully defend herself in any such ostensible proceedings.

8.  Furthermore, compelling behavior and limiting, restricting, or even preventing Appellant from practicing law and earning a livelihood implicates Appellant's First Amendment rights, and even her Fifth Amendment rights to pursue an occupation and earn a living.

9.  Moreover, it should be noted that Appellant was a public prosecutor for 12 years prosecuting serious criminal fraud cases; since 2019 she has been a criminal defense attorney handling a substantial number of cases.

10. In addition to the serious constitutional issues raised above, the fact that the District Court has already directed the Clerk to forward her name to grievance commissions and disciplinary boards for investigation places an undue burden on Appellant's current practice and unnecessarily embarrasses her and impedes her ability to continue to serve her clients, all the while without a disposition on appeal of those very sanctions and whether they are even warranted in her case.

11. Indeed, the District Court's kitchen sink approach imposing all the same sanctions on all the attorneys is incongruent, at best – at worst, it has the direct effect in Appellant's case of providing disincentives to her and other lawyers like her from being dissuaded to represent clients in serious fraud cases in the future.

12. With all of this occurring by fiat, it would be impracticable (indeed is impracticable), and virtually impossible for Appellant to seek a stay in the District Court first.  See Fed. R. App. P.


8(2)(a)(i); *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020). Appellant respectfully submits it is therefore appropriate to ask this Court for a stay in the first instance.

**13.** "An appellate court's power to hold an order in abeyance while it assesses the legality of the order has been described as 'inherent,' preserved in the grant of authority to federal courts to 'issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009) (quoting 28 U.S.C. § 1651(a)). Four factors govern the exercise of this power: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id*. at 425-26 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

**14.** "A stay 'simply suspend[s] judicial alteration of the status quo,' while injunctive relief 'grants judicial intervention that has been withheld by lower courts.'" *Id*. at 429 (quoting *Ohio Citizens for Responsible Energy, Inc. v. NRC*, 479 U.S. 1312, 1313 (1986) (Scalia, J., in chambers)). "Both can have the practical effect of preventing some action before the legality of that action has been conclusively determined. But a stay achieves this result by temporarily suspending the source of authority to act—the order or judgment in question—not by directing an actor's conduct." *Id*. at 428-29. Cases presenting the irreparable loss of a First Amendment right "for even minimal periods of time" are uniquely appropriate for stays and the even more demanding standard applicable to injunctions on appeal. E.g., *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam).

**15.** The sanctions proceedings below have nothing to do with compensating the defendants and officious interlopers granted leave to intervene. They have everything to do with an effort to

strip Appellant of her livelihood via suspension or disbarment, and force her to listen to twelve hours of speech the District Court deems politically acceptable. We know this because the District Court stayed the monetary award, which easily could have been deposited with the court or even paid and returned once Appellant prevails.

**16.** Irreparable harm has occurred and will occur if the District Court is allowed to continue down this path of enforcing, indeed executing, her judgment and opinion without measured and legitimate review by an appellate panel – which Appellant has every right to seek *before* being punished.

**17.** Finally, to close this point, if the District Court would have wanted to pursue sanctions against Appellant, the federal rules allow federal judges wide discretion in the meting out of sanctions and only such as raise "substantial questions as to the lawyer's honesty, trustworthiness, and fitness for practice" are referred to state disciplinary authorities. See Parness, *Disciplinary Referrals Under New Federal Civil Rule 11*, 61 Tenn. L. Rev. 37, 60-61 (1993). This could have included a referral to the federal court disciplinary panel, which would have at least allowed an internal review panel of judges to assess whether any such extreme sanctions as referral to a state disciplinary authority were even warranted. They are not for this Appellant.

**18.** Regarding the latter, Appellant has a very high likelihood of success on her arguments that the District Court's "non-partisan" education requirement is unconstitutional and the District Court's utter failure to discuss, far less individualize, the appropriate punishment under the appropriate sanctions standards is unlawful. This is especially significant in Appellant's case because she was not involved in the initial phases of the case, but only the appeal – the District Court's order dismissing the plaintiff's case without an evidentiary hearing was issued on December 7, 2020 (RE #62). Appellant filed a notice of appearance and a notice of appeal on the

next day! (RE #63, #64). Appellant also voluntarily dismissed the case on January 14, 2021, and thus falls within the Rule 11 "safe harbor". (RE ## 86-91).

**19.** Even accepting the District Court's partisan worldview as to the facts of this case, there is no excuse for those aspects of its order that require Appellant to submit to disciplinary proceedings and forced re-education through the directed continuing legal education courses.

**20.** Appellant is also likely to succeed on her argument that, by dismissing within the time allowed to respond to the pending motions for sanctions and motions to dismiss, she substantially complied with Rule 11's safe harbor. (RE ## 86-91).

**21.** Even assuming the District Court had jurisdiction to consider the Governor and Secretary of State's post-dismissal motion for sanctions, there is no dispute that those parties—the actual Defendants—moved for sanctions solely under the District Court's inherent authority and 28 U.S.C. § 1927. They did not move under Rule 11. Yet only Rule 11 provides a basis for non-monetary sanctions. The Supreme Court has made clear that inherent-authority sanctions must be "compensatory rather than punitive in nature" and so are "limited to the fees the innocent party incurred solely because of the misconduct." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1182, 1186 (2017). Section 1927 sanctions are limited by the terms of the statute to the "excess costs, expenses, and attorneys' fees reasonably incurred" because the proceedings were "multipli[ed]" in an "unreasonabl[e] and vexatious[]" manner. 28 U.S.C. § 1927.

**22.** The entirety of the District Court's authority to impose any non-monetary sanctions at all therefore rests on the motion by Intervenor Detroit under Rule 11. But, even if one bypasses the District Court's complete failure to individualize its discussion of each Appellant's role, responsibility, and the appropriate punishment under Rule 11—among other procedural problems—there remains the problem that the District Court's Rule 11 discussion opens by

mentioning Appellant's failure to dismiss this case once it became moot. Opinion, RE 172, Page ID # 6942. Yet Rule 11, which does not impose continuing obligations, cannot be used to punish an attorney for anything that happens *after* the filing of the complained-of pleading or paper, such as mootness. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989). Thus even that part of the order addressed solely to Detroit's motion for sanctions cannot withstand scrutiny.

23. The sanctions orders before the Court are poorly drafted, obscuring fundamental differences among the kinds of sanctions available (indeed, even requested) and the highly varying roles of each Appellant in the underlying case. At a minimum, the District Court should be required to set forth the proper standard for each species of sanctions and to apply that standard to the specific conduct of each Appellant. The District Court's kitchen-sink approach, whether by design or neglect, obfuscates the unavailability of sanctions as a matter of law on almost all of the bases on which it relied.

24. Further, it is a flagrant First Amendment violation to require that Appellant be re-educated to the District Court's satisfaction by a "non-partisan" group concerning pleading standards and election law.

25. The Court analyzes requirements designed to promote "non-partisan" ends under strict scrutiny. *Winter v. Wolnitzek*, 834 F.3d 681, 688-89 (6th Cir. 2016); *Planet Aid v. City of St. Johns, MI*, 782 F.3d 318, 330 (6th Cir. 2015). The District Court did not so much as identify, far less explain, what compelling interests it intended to advance by forbidding Appellants to participate in "partisan" continuing legal education, or even how continuing education providers certified by state authorities could be "partisan" in the first place. It did not define the term "non-partisan" either, giving rise to intractable vagueness problems. No explanation appears of what

7

connection—if any, and certainly not the required narrow tailoring showing—"non-partisan" education has to whatever ends the District Court had in mind. At a minimum, in addition to the concerns with prejudicing Appellant's due process and other mentioned constitutional rights by referring her to a state disciplinary entity *before* full explication of the merits of the sanctions order, and compelling her to undergo forced re-education by the District Court's choice of continuing legal education, at a minimum, these measures should be suspended while the Court considers Appellant's arguments on appeal – especially since Appellant did not file a notice of appearance until after the District Court's dismissal and her role was therefore limited. The District Court dismissed the case on December 7, 2020 (RE #62) and Appellant filed an appearance and notice of appeal on December 8, 2020 (RE ## 63, 64).

**26.** Finally, Appellant would be irreparably injured if suspended or disbarred, or otherwise disciplined, based on the District Court's erroneous order, especially where Appellant did not file an appearance in the case and her notice of appeal until after the District Court's order. (RE ## 63, 64).

**27.** There should likewise be no serious dispute that a referral from a federal judge suggesting such serious penalties puts Appellant in danger of such. Because she would be punished for protected First Amendment activity, she would also be irreparably injured as a matter of law. *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam) (quoting Roman Catholic Diocese of *Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (per curiam)). And the District Court's indoctrination remedy, barring Appellant from receiving continuing legal education from any group it deems "partisan," is yet another First Amendment harm that, however brief, is irremediable.

**28.** While Appellant's livelihood and First Amendment and Due Process rights are on the line, it is inconceivable how any other party could suffer the slightest prejudice from a stay of the non-monetary aspects of the order.

WHEREFORE, undersigned respectfully requests the Court to grant her Motion to Stay All Non-Monetary Sanctions Imposed by the District Court, including proceedings initiated by the referral by the District Court to state bar disciplinary bodies and grievance commissions and the District Court's forced re-education of Appellant compelling her to attend only certain selective continuing legal education courses.

                                              Respectfully submitted by,

                                              /s/ Stefanie Lynn Junttila

                                              STEFANIE LYNN JUNTTILA

Date: February 22, 2022

## CERTIFICATE OF SERVICE

STEFANIE LYNN JUNTTILA, *in propria persona*, being first duly sworn, deposes and states that on the 22nd of February, 2022, she caused a copy of the within Motion to Stay to be served upon all parties of record by electronically filing and serving same upon counsel of record for the parties, each of whom is registered with the United States Court of Appeals for the Sixth Circuit.

Respectfully submitted by,

/s/ Stefanie Lynn Junttila

_____
STEFANIE LYNN JUNTTILA