No. 22-1010

In the
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

TIMOTHY KING,

    Plaintiff,
and

STEFANIE LYNN JUNTTILA,

    Interested Party-Appellant,

v.

GRETCHEN WHITMER; JOCELYN BENSON; CITY OF DETROIT, MI,

    Defendants-Appellees.

Appeal from the United States District Court
Eastern District of Michigan, Southern Division

**BRIEF FOR DEFENDANTS-APPELLEES GOVERNOR
GRETCHEN WHITMER AND SECRETARY OF STATE JOCELYN
BENSON**

Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorney for Defendants-
Appellees Governor Whitmer
and Secretary Benson
PO Box 30736
Lansing, Michigan 48909
517.335.7659

Dated:     June 24, 2022

# TABLE OF CONTENTS

Page

Table of Authorities................................................................... iii

Statement regarding Oral Argument ....................................... vi

Jurisdictional Statement............................................................1

Statement of Issues Presented...................................................2

Introduction................................................................................3

Statement of the Case ...............................................................4

    A.    Michigan certifies the November election. .............................4

    B.    Plaintiffs file suit and the District Court denies their motion for injunctive relief on numerous grounds. ...............5

    C.    Plaintiffs continue to press their claims despite the District Court's ruling and subsequent events rendering the case moot. ..........................................................8

    D.    The City of Detroit and the State Defendants move for sanctions. ................................................................................14

Standard of Review ..................................................................16

Summary of Argument..............................................................17

Argument...................................................................................20

I.    The District Court did not abuse its discretion in awarding sanctions to the State Defendants pursuant to its inherent authority where the court found that the claims advanced were meritless, that Appellant Junttila knew or should have known this, and that the motive for filing suit was for an improper purpose. .......................................................................20

A.  Standards for granting fees under the court's inherent authority...................................................................20

B.  The District Court did not err in granting sanctions pursuant to its inherent authority, in addition to its grant under Rule 11............................................................21

C.  The District Court properly applied the standards for granting sanctions pursuant to its inherent authority........22

   1.  Plaintiffs' claims were meritless...................................23

   2.  Junttila knew or should have known that Plaintiffs' claims were meritless...................................24

   3.  The lawsuit was filed for an improper purpose...........25

II.  The District Court did not abuse its discretion in awarding sanctions to the State Defendants pursuant to 28 U.S.C. § 1927 where it found that Junttila had unreasonably and vexatiously multiplied the litigation. ............................................34

A.  Standards for granting sanctions under 28 U.S.C. § 1927. ...................................................................................34

B.  The District Court properly applied these standards in granting sanctions pursuant to § 1927.................................35

Conclusion and Relief Requested..............................................................47

Certificate of Compliance.........................................................................48

Certificate of Service ................................................................................49

Designation of Relevant District Court Documents................................50

# TABLE OF AUTHORITIES

Page

## Cases

*Andretti v. Borla Performance Indus., Inc.*, 426 F.3d 824 (6th Cir. 2005) ...................................................................................... 44

*Bawle v. Rockwell Intern. Corp.*, 79 Fed Appx 875 (6th Cir. 2003) ........ 29

*BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742 (6th Cir. 2010) .................................................................................. 20, 25

*Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308 (6th Cir. 1997) ......................................................... 20, 23, 24, 25

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ..................... 20, 21, 25, 32

*Dahnke v. Teamsters Local 695,* 906 F.2d 1192 (7th Cir.1990) .............. 42

*Dearborn Street Bldg. Associates, L.L.C. v. Huntington Nat. Bank*, 411 Fed. Appx 847 (6th Cir. 2011) ........................................ 33

*First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501 (6th Cir.2002) .................................................... 16, 21, 25

*Fox v. Vice*, 563 U.S. 826 (2011) ........................................................ 33

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017) ............. 32

*Griffin Indus., Inc. v. United States E.P.A*, 640 F.3d 682 (6th Cir. 2011) ......................................................................................... 21

*In re Ferro Corp. Derivative Litig.,* 511 F.3d 611 (6th Cir.2008) ........... 17

*In re Ruben*, 825 F.2d 977 (6th Cir. 1987) ....................................... 28, 35

*Metz v. Unizan Bank*, 655 F.3d 485 (6th Cir. 2011) .............................. 20

*Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18 (2d Cir. 1980) ......................................................................................... 25

*Morris v. City of Detroit Water & Sewage Dep't*, 20 F. App'x 466
(6th Cir. 2001) ................................................................. 44

*Nieves v. City of Cleveland*, 153 F. App'x 349 (6th Cir. 2005) ............... 27

*Rees v. W.M. Barr & Co., Inc.*, 736 F. App'x 119 (6th Cir. 2018) .......... 24

*Ridder v. City of Springfield,* 109 F.3d 288 (6th Cir.1997) ............. 35, 46

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 [ ] (1980)................. 20, 21

*Ruben v. Warren City Sch.*, 825 F.2d 977 (6th Cir. 1987) ..................... 41

*Salkil v. Mount Sterling Tp. Police Dep't,* 458 F.3d 520 (6th Cir.
2006) ................................................................. 16, 35

*Tisdale v. Fed. Express Corp.,* 415 F.3d 516 (6th Cir.2005)................. 16

*United States ex rel. Tingley v. PNC Fin. Servs. Grp., Inc.*, 75 F.
App'x 342 (6th Cir. 2017) ........................................... 32, 45

*Webster v. Sowders*, 846 F.2d 1032 (6th Cir. 1988) ............................... 27

*Williamson v. Recovery Limited Partnership*, 826 F.3d 297 (2016) ....... 21

## Statutes

Mich. Comp. Laws § 168.43 .................................................... 4

Mich. Comp. Laws § 168.22 .................................................... 4

Mich. Comp. Laws § 168.46 .................................................... 5

Mich. Comp. Laws § 168.47 .................................................... 9

Mich. Comp. Laws § 168.801.................................................... 4

Mich. Comp. Laws § 168.821.................................................... 4

Mich. Comp. Laws § 168.822.................................................... 4

Mich. Comp. Laws § 168.842(1) ................................................ 4

Mich. Comp. Laws § 168.879(1)(c) ......................................................... 5

## Other Authorities

3 U.S.C. § 5 ......................................................................................... 6

3 U.S.C. § 6 ......................................................................................... 5

3 U.S.C. § 7 ......................................................................................... 9

3 U.S.C. § 15 ..................................................................................... 12

28 U.S.C. § 1291 ................................................................................ 1

28 U.S.C. § 1927 ....................................................................... *passim*

42 U.S.C. § 1983 ................................................................................ 7

## Rules

L.R. 7.1(e)(1)(B) ............................................................................... 41

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Stefanie Lynn Junttila has requested oral argument. Defendants-Appellees Michigan Governor Gretchen Whitmer and Secretary of State Jocelyn Benson believe that oral argument is unnecessary for the Court to decide the issues presented in this appeal of the District Court's well-reasoned opinions and that the issues raised in this appeal are resolved by established law.  However, if the Court grants oral argument, Defendants-Appellees request the opportunity to present argument.

## JURISDICTIONAL STATEMENT

Defendants-Appellees Michigan Governor Gretchen Whitmer and Secretary of State Jocelyn Benson agree that this Court generally has jurisdiction over appeals from the final decisions of district courts under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED

1.    A court may grant sanctions pursuant to its inherent authority when it finds that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing suit was for an improper purpose. Where the District Court made such findings, and where those findings were supported by law and fact, did the Court abuse its discretion in awarding the State Defendants sanctions?

2.    A court may grant sanctions pursuant to 28 U.S.C. § 1927 when it finds that counsel has unreasonably and vexatiously multiplied a proceeding. Where the District Court made such findings, and where those findings were supported by law and fact, did the Court abuse its discretion in awarding the State Defendants sanctions?

## INTRODUCTION

This appeal is the vestige of an onslaught of litigation filed in Michigan challenging the legitimacy of the state's November 3, 2020 presidential election based on outlandish claims of fraud and other errors.

Filed at the eleventh hour and supported by nothing more than speculation and conjecture, Plaintiffs, Republican presidential elector candidates and party operatives, and their counsel pursued legal claims that they knew or should have known were frivolous. Further, Plaintiffs' counsel unreasonably and vexatiously extended this case by failing to dismiss when it was clearly moot by their own acknowledgement. As a result, the District Court appropriately imposed sanctions under 28 U.S.C. § 1927 against all counsel, including Appellant Stefanie Junttila.

The District Court also had inherent authority to impose sanctions and award attorneys' fees where counsel pursued frivolous claims and did so for an improper purpose. Again, Plaintiffs' and their counsel offered nothing more than conspiracy theories unaccompanied by any actual evidence of fraud affecting the results of Michigan's

presidential election.  Where their legal claims were frivolous, and the timing of the lawsuit and the nature of the relief requested suspect, the District Court did not abuse its discretion in determining that counsels' motive for filing suit was improper, and that sanctions were warranted.

This Court should affirm and dismiss Junttila's appeal.

## STATEMENT OF THE CASE

### A.    Michigan certifies the November election.

Michigan, like the other states and the District of Columbia, held an election on November 3, 2020 to select electors for president and vice president.  See Mich. Comp Laws § 168.43.

Michigan's city and township clerks began canvassing results immediately after the polls closed on November 3.  Mich. Comp. Laws § 168.801.  The boards of county canvassers commenced canvassing two days later, and the 83 county boards completed their canvasses by November 17.  Mich. Comp. Laws §§ 168.821, 168.822.

Defendant Board of State Canvassers, a bi-partisan board, see Mich. Comp. Laws § 168.22, was required to meet by the twentieth day after the election to certify the results.  Mich. Comp. Laws § 168.842(1).  The Board met on November 23 and certified the statewide results by a

4

3-0 vote.[1]  President Joe Biden defeated former President Donald

Trump by 154,188 votes.[2]  No presidential candidate requested a

recount within the time permitted.  See Mich. Comp. Laws §

168.879(1)(c).

"As soon as practicable after the state board of canvassers has"

certified the results, the Governor must certify the presidential electors

to the Archivist for the United States.  Mich. Comp. Laws § 168.46; 3

U.S.C. § 6.[3]  Defendant Governor Whitmer certified the electors the

same day the Board certified the results.[4]

### B.    Plaintiffs file suit and the District Court denies their motion for injunctive relief on numerous grounds.

Late in the evening on November 25 and the day before

Thanksgiving, Plaintiffs, several Republican Party presidential electors

---

[1] *See* 11/23/20 Draft Meeting Minutes, Board of State Canvassers, available at
https://www.michigan.gov/documents/sos/112320_draft_minutes_70867
2_7.pdf, (accessed June 24, 2022.)

[2] *See* November 2020 General Election Results, available at
https://mielections.us/election/results/2020GEN_CENR.html., (accessed
June 24, 2021.)

[3] Although Michigan's statute continues to refer to the U.S. Secretary of
State, under 3 U.S.C. § 6 the Certificate of Ascertainment is sent to the
Archivist of the United States.

[4] *See* Michigan's Certificate of Ascertainment, available at
https://www.archives.gov/files/electoral-college/2020/ascertainment-
michigan.pdf, (accessed June 24, 2022.)

and party operatives, filed their complaint for declaratory and
injunctive relief in the District Court against Michigan Secretary of
State Jocelyn Benson, Governor Whitmer, and the Board of State
Canvassers.  (R. 1, Page ID # 1.)  Plaintiffs alleged widespread fraud in
the distribution, collection, and counting of ballots in Michigan, as well
as violations of state law as to certain election challengers and the
manipulation of ballots through corrupt election machines and
software.  (*Id.*)  Four days later, Plaintiffs filed an amended complaint
(R. 6, Am. Compl., Page ID # 872), an emergency motion for declaratory
and injunctive relief, (R. 7, Mot., Page ID # 1832), and an emergency
motion to seal on November 29, 2020.  (R. 8, Page ID # 1850.)  Plaintiffs
asserted in their injunctive motion that relief "must be granted in
advance of December 8, 2020."  (R. 7, Pls' Mot, Page ID # 1846).[5]

Plaintiffs' amended complaint consisted of over 200 numbered
paragraphs and over 900 additional pages of affidavits and other
documents, in which they raised a similar litany of perceived fraud and
irregularities that had been alleged in other Michigan cases and

---

[5] Under federal law, the "safe harbor" provision regarding Michigan's
certification of electors was set to activate on December 8.  *See* 3 U.S.C.
§ 5.

rejected by the courts. (R. 6, Am. Compl., Page ID # 872.) Plaintiffs
alleged three claims pursuant to 42 U.S.C. § 1983: (Count I) violation of
the Elections and Electors Clauses; (Count II) violation of the
Fourteenth Amendment Equal Protection Clause; and (Count III)
violation of the Fourteenth Amendment Due Process Clause. (R. 6,
Page ID # 882.) In Count IV, Plaintiffs alleged violations of various
sections of the Michigan Election Law. (*Id.*)

On December 1, motions to intervene were filed by the City of
Detroit (R. 15, Page ID # 2090), Robert Davis (R. 12, Page ID # 1860),
and the Democratic National Committee and Michigan Democratic
Party ("DNC/MDP"). (R. 14, Page ID # 1878.) On December 2, the
District Court granted the motions to intervene. (R. 28, Page ID #
2142.) As ordered, Defendants filed response briefs with respect to
Plaintiffs' emergency motions by 8:00 p.m. the same day. (R. 29, 31, 32,
34, 35, 36, 37, 39, 49, 50.)

On December 7, 2020, the District Court entered an opinion and
order denying Plaintiffs' emergency motion for injunctive relief, holding
that Plaintiffs failed to demonstrate a likelihood of success on the
merits of their claims for numerous reasons. (R. 62, Op. & Order, Page

ID # 3301-3328.)  The court further concluded that the irreparable

harm, balance of harm, and public interest factors weighed against

granting relief.  (*Id.* at Page ID # 3329.)

### C. Plaintiffs continue to press their claims despite the District Court's ruling and subsequent events rendering the case moot.

The next day, December 8, Plaintiffs filed a notice of appeal to this

Court, signed by Junttila.  (R. 64, Page ID # 3332.)[6]  But Plaintiffs did

not move to expedite their appeal or file any substantive documents,

likely because the State of Texas moved to file an original action against

Michigan and several other "swing" states in the U.S. Supreme Court

on December 7, making similar allegations of widespread fraud in

Michigan's general election, and requesting that the Supreme Court

overturn Michigan's certified results.  *See Texas* v. *Pennsylvania, et al.*,

22O155.  But on December 11, the Supreme Court denied Texas's

motion "for lack of standing under Article III of the Constitution"

---

[6] Junttila filed an appearance in the case the same day.  (R. 63, Page ID # 3331.)

because "Texas ha[d] not demonstrated a judicially cognizable interest in the manner in which another State conducts its elections."[7]

Plaintiffs then pivoted and filed a petition for certiorari in the Supreme Court on December 11, seeking to bypass review of the District Court's opinion by this Court. *See* U.S. Supreme Court No. 20-815.[8]  Plaintiffs did not move to expedite their petition at that time, despite the time-sensitive nature of their claims.

Three days later, on December 14, and as required by law, Michigan's presidential electors "convene[d]" in the State's capitol and cast their votes for then President-elect Biden.  Mich. Comp. Laws § 168.47; 3 U.S.C. § 7.[9]  They did so under heavy security in light of credible threats of violence that required the capitol and other state buildings be closed to the public.[10]

---

[7] *See* order dated December 11, 2020, in Case No. 22O155, available at https://www.supremecourt.gov/orders/courtorders/121120zr_p860.pdf (accessed June 24, 2022.)

[8] Docket sheet and filings available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-815.html, (accessed June 24, 2022).

[9] *See* Michigan's Certificate of the Votes, available at https://www.archives.gov/files/electoral-college/2020/vote-michigan.pdf (accessed June 24, 2022.)

[10] *See* Michigan Gov. Whitmer Addresses Security Threat to Electoral College Vote, 12/14/20, National Public Radio, available at

On the same day and outside Michigan's capitol, candidates for presidential elector selected by the Republican Party, presumably including some of the Plaintiffs herein, sought access to the capitol in order to cast alternate votes for President Trump. They were not allowed access to the building, however, because there is no process for permitting the unsuccessful elector candidates to cast their votes.[11] Furthermore, leadership for both the Michigan House of Representatives and the Michigan Senate had indicated that the results of the election and the presidential electors' must stand under the law.[12]

Days later, on December 18, Plaintiffs moved to expedite their petition for certiorari in the Supreme Court and to consolidate it with

---

https://www.npr.org/sections/biden-transition-updates/2020/12/14/946243439/michigan-gov-whitmer-addresses-security-threat-to-electoral-college-vote (accessed June 24, 2022.)

[11] *See* Michigan Republicans who cast electoral votes for Trump have no chance of changing Electoral College result, 12/15/20, MLIVE, available at https://www.mlive.com/public-interest/2020/12/michigan-republicans-who-cast-electoral-votes-for-trump-have-no-chance-of-changing-electoral-college-result.html, (accessed June 24, 2022.)

[12] *Id.*

another pending petition.[13]  Defendants Whitmer, Benson and the Board filed a response in opposition to Plaintiffs' motion.[14]

Back in the District Court, on December 22, Defendants Whitmer, Benson and the Board, (R. 70, Defs' Mot. & Br., Page ID # 3350-3428), along with Intervening Defendants City of Detroit, the DNC and the MDP, filed motions to dismiss the case.

In response to defense counsel's e-mail to Plaintiffs' counsel seeking concurrence in their motion to dismiss, Junttila responded that since "[t]his case is on appeal to the Sixth Circuit and to the United States Supreme Court," Plaintiffs' counsel was "not in a position to respond to [the request for concurrence] until these appeals are decided," and counsel did "not believe [this Court] has jurisdiction to consider [Defendants'] motion while the case is on appeal." (R. 105-3, Page ID # 4432, Ex. B, 12/22/20 email.)  This statement by Junttila was incorrect since no stay had been entered by the District Court, by this Court, or by the Supreme Court in this case. In fact, Plaintiffs did not

---

[13] Docket sheet and filings for Case No. 20-815 are available at https://www.supremecourt.gov/search.aspx?filename=/docket/docketfiles/html/public/20-815.html, (accessed June 24, 2022.)
[14] *Id.*

move for a stay of this case in any court. Plaintiffs' counsel presumably realized her error as she subsequently asked for an extension of time to respond to Defendants' motion on January 12, 2021, (ECF No. 82), the day Plaintiffs' response was due under the court rule. *See* L.R. 7.1(e)(1)(B).

On January 6, 2021, Congress convened in a joint session as required by 3 U.S.C. § 15 to count the electoral votes of the fifty states and the District of Columbia. Despite the shocking events that later occurred, in the early hours of January 7, Congress counted Michigan's 16 electoral votes for President-elect Biden. And at the end of the joint session, Mr. Biden was certified the winner and the new President-elect. With that declaration, the November 3, 2020, presidential election concluded.

Not surprisingly, the Supreme Court thereafter denied Plaintiffs' motion to expedite their appeal on January 11, 2021, in a short order.[15]

The next day, back in the District Court, Plaintiffs requested an extension until January 19 to respond to the motions to dismiss, signed by Junttila, (R. 82, Page ID # 3863), and the City of Detroit filed a

---

[15] *Id.*

response in opposition (R. 83). By text order, the court granted Plaintiffs an extension only until January 14, 2021.

On January 14, instead of responding to the motions to dismiss, Plaintiffs filed notices of voluntary dismissal under Rule 41 as to all Defendants except Robert Davis (who had answered the amended complaint), signed by Junttila. (R. 86 through 91.) Subsequently, Plaintiffs moved for a voluntary dismissal as to Davis. (R. 92.)

Notably, also on January 14, Defendants Whitmer, Benson, and the Board, as well as the City of Detroit, filed responses in opposition to Plaintiffs' petition in the Supreme Court since Plaintiffs had not withdrawn or dismissed that appeal despite the vote in Congress seven days earlier.[16]

Plaintiffs eventually sought to dismiss their appeal before this Court, which dismissal was entered January 26, 2021. (R. 114.) And the Supreme Court denied Plaintiffs' petition by routine order on February 22, 2021.[17] It is unclear whether Plaintiffs' counsel

---

[16] *Id.*

[17] *Id.*

communicated to the Supreme Court that they had dismissed both the underlying case and appeal weeks earlier.

**D.    The City of Detroit and the State Defendants move for sanctions.**

Defendant City of Detroit filed a motion for sanctions under Rule 11 on January 5, 2021, (R. 78, Page ID # 3616-3836), which the State Defendants filed a concurrence with on January 14, 2021, (R. 84, Page ID # 3881.)

On January 28, 2022, Defendants Governor Whitmer and Secretary Benson filed a motion for sanctions pursuant to 28 U.S.C. § 1927 and the District Court's inherent authority to sanction Plaintiffs' counsel Sidney Powell, Greg Rohl, Scott Hagerstrom, and Junttila, and award attorneys' fees.  (R. 105, Page ID # 4340.)[18]  Plaintiffs filed a response in opposition to the State's motion, signed by Junttila, (R. 112, Page ID # 4600), and the State Defendant's filed a reply in support of their motion, (R. 116, Page ID # 4741).

Subsequently, the Defendants Whitmer and Benson moved to file a supplemental brief in support of their motion for sanctions in light of

---

[18] Defendant Board of State Canvassers did not join in this motion.

admissions Plaintiffs' counsel Powell made in a defamation case filed by
Dominion Voting Systems, (R. 118, Page ID # 4778), which motion the
District Court granted.  Plaintiffs and their counsel opposed the motion
and supplemental brief, signed by Junttila.  (R. 120, Page ID # 4995.)

The District Court heard the various motions for sanctions during
a marathon hearing on July 12, 2021.  (R. 157, Tr.)  Afterwards, the
court entered an order permitting supplemental briefing by the parties
as to issues that arose during the hearing.  (R. 150, Order, Page ID #
5269.)  The Plaintiffs' counsel, including Junttila, filed supplemental
briefs, (R. 161, Page ID # 5794; R. 165, Page ID # 6562), to which the
State Defendants filed a combined response, (R. 166, Page ID # 6583.)

On August 25, 2021, the District Court issued its lengthy opinion
and order granting the motions for sanctions under Rule 11, § 1927 and
the court's inherent authority.  (R. 172, Op. & Order, Page ID # 6890.)
The Court awarded attorney fees and imposed other professional
sanctions against Plaintiffs' counsel and ordered Defendants to submit
their costs within 14 days, to which Plaintiffs' counsel could respond.
*Id.*, Page ID # 6998.

15

Counsel for the State Defendants timely submitted their costs, requesting an award of $21,964.75 in attorney fees. (R. 173, Page ID # 7000.) Plaintiffs' counsel filed no objections as to the amount of the State's request. On December 2, 2021, the District Court issued its opinion and order awarding fees to the defendants, including the $21,964.75 requested by the State Defendants. (R. 179, Op. & Order, Page ID # 7142, 7168.)

Thereafter, Plaintiffs' counsel filed various appeals, including the instant appeal by Junttila. (R. 182, Page ID # 7174.)[19]

## STANDARD OF REVIEW

This Court reviews for abuse of discretion the decision to impose sanctions pursuant to Rule 11, Rule 26, 28 U.S.C. § 1927, and the district court's inherent power. *Salkil v. Mount Sterling Twp. Police Dep't,* 458 F.3d 520, 527 (6th Cir. 2006), *Tisdale v. Fed. Express Corp.,* 415 F.3d 516, 525 (6th Cir.2005); *First Bank of Marietta v. Hartford Underwriters Ins. Co.,* 307 F.3d 501, 510 (6th Cir.2002). "A

---

[19] Plaintiffs' counsel Powell, Rohl, Hagerstrom, Johnson, Kleinhendler and Haller filed a separate appeal, (R. 182, Page ID # 7174), to which the State Defendants will separately respond.

court abuses its discretion when it commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact." *In re Ferro Corp. Derivative Litig.,* 511 F.3d 611, 623 (6th Cir.2008).

## SUMMARY OF ARGUMENT

Ms. Junttila argues that the District Court abused its discretion in imposing sanctions against her under Rule 11 of the Federal Rules of Civil Procedure,[20] 28 U.S.C. § 1927, and the court's inherent authority. But she is wrong for two reasons.

First, the District Court properly granted sanctions in favor of the State Defendants pursuant to its inherent authority. Applying the proper standards and supporting its determination with facts and law, the court concluded the Plaintiffs' legal claims were meritless, that

---

[20] The State Defendants did not move for sanctions under Rule 11. (R. 105, Page ID # 4340.) To the extent the District Court granted sanctions in the State Defendants favor under that rule, as Junttila suggests in her briefing, Defendants support the court's inherent discretion to do so. But the State Defendants will leave the substantive defense of the court's imposition of Rule 11 sanctions to the City of Detroit, the movant under that rule. The arguments the City makes will be applicable to the State as well, and arguments here would be duplicative.

counsel knew or should have known this, and that counsels' motives in filing this lawsuit was improper.

Junttila failed to address the District Court's determination as to the merits of the claims and her knowledge of their lack of merit and has thus waived any argument as to those factors. She argues instead that her limited role as an appellate attorney did not support a finding of misconduct as to her. But the record shows that Junttila's role was not so limited and that she participated as counsel before the court and engaged in conduct the court found improper. She further argues that the court was required to make an individualized finding regarding her culpable conduct before sanctions could be awarded. But the case Junttila cited does not foreclose sanctions again a team of attorneys who collectively engaged in improper conduct. And regardless, the record supports a finding that Junttila's specific conduct in this case was sanctionable.

Second, the District Court properly granted sanctions in favor of the State Defendants under 28 U.S.C. § 1927. Applying the proper standards and supporting its determination with facts and law, the court concluded the Plaintiffs' counsel, including Junttila, had

unreasonably and vexatiously multiplied the proceedings by failing to dismiss their lawsuit when it became moot on December 14, 2021, after the vote of Michigan's Presidential electors, per Plaintiffs' own arguments.

Junttila again argues that her limited role as an appellate attorney did not support a finding of vexatious conduct as to her. But the record shows that Junttila's role was not so limited and that she participated as counsel before the court and engaged in conduct that unreasonably and vexatiously perpetuated the proceedings. She further argues that the court was required to make an individualized finding regarding her culpable conduct before sanctions could be awarded. But again, the case Junttila cited does not foreclose sanctions again a team of attorneys who collectively engaged in improper conduct. And regardless, the record supports a finding that Junttila's specific conduct in this case was sanctionable under § 1927.

Because Junttila fails to demonstrate the District Court abused its discretion in imposing sanctions, this Court should affirm.

# ARGUMENT

I. **The District Court did not abuse its discretion in awarding sanctions to the State Defendants pursuant to its inherent authority where the court found that the claims advanced were meritless, that Appellant Junttila knew or should have known this, and that the motive for filing suit was for an improper purpose.**

## A. Standards for granting fees under the court's inherent authority.

"A court may assess attorney's fees under its inherent powers 'when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons,' *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) [ ] (internal quotation marks omitted), or when the conduct is 'tantamount to bad faith,' *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 [ ] (1980)." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011). A court may award attorney fees under the bad faith exception upon finding the following three prongs set forth in *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) are met: "[1] that the claims advanced were meritless, [2] that counsel knew or should have known this, and [3] that the motive for filing the suit was for an improper purpose such as harassment." *Id.* (quoting *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 751 (6th Cir. 2010)) (internal

20

quotation marks omitted).  This Court reviews a court's findings of fact, including its findings of bad faith, for clear error.  *Griffin Indus., Inc. v. United States E.P.A*, 640 F.3d 682, 686 (6th Cir. 2011).[21]

### B.    The District Court did not err in granting sanctions pursuant to its inherent authority, in addition to its grant under Rule 11.

Junttila first argues that the District Court was precluded, or should at least have declined, to impose sanctions under its inherent authority where sanctions under Rule 11 were adequate.  (ECF No. 28, Appellant's Br, Page ID # 29-30.)  But the court did not err in granting sanctions on multiple grounds.

Junttila cites *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) in support of her argument.  *Id.*, Page ID # 29.  But the Supreme Court expressly stated there that if the Rules are not adequate, a court may rely on its inherent authority.  *Id.* at 50.  And this Court has held as much.  *See, First Bank of Marietta v. Hartford Underwriters Ins. Co.*,

---

[21] This standard applies where a plaintiff has filed a frivolous lawsuit. *Williamson v. Recovery Limited Partnership*, 826 F.3d 297, 301-02 (2016).  But " 'bad faith may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.' "  *Hall v. Cole*, 412 U.S. 1, 15 (1973).  *See also, Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765–66 (1980).

307 F.3d 501 (2002).  In *First Bank of Marietta*, this Court discussed *Chambers* at length and determined that a court continues to have discretion to impose sanctions under its inherent authority even where Rule 11 applies or only applies to some of the misconduct or would fail to provide a sufficient remedy.  307 F.3d at 511-17.  Accordingly, the District Court could, in its discretion, impose sanctions under both Rule 11 and its inherent authority.

Furthermore, the State Defendants did not move for sanctions under Rule 11.  These Defendants moved under § 1927 and the court's inherent authority and sought sanctions against Junttila under either theory or both.  So, this ground for sanctions was properly before the District Court.

## C.     The District Court properly applied the standards for granting sanctions pursuant to its inherent authority.

The District Court correctly set forth the standards and rules applicable for granting sanctions pursuant to its inherent authority.  (R. 172, Op. & Order, Page ID # 6931-36.)  And that court correctly applied these standards in granting sanctions in favor of Governor Whitmer and Secretary Benson pursuant to its inherent authority.

22

### 1.    Plaintiffs' claims were meritless.

The first element for an award of sanctions under the court's inherent authority is that the claims advanced were meritless. *Big Yank Corp.*, 125 F.3d at 313.

The District Court determined that Plaintiffs' claims were meritless because they were not grounded in the law or the facts, incorporating its conclusions from its Rule 11 analysis:

> As discussed in the preceding subsections, Plaintiffs' counsel advanced claims that were not well-grounded in the law, as demonstrated by their (i) presentment of claims not warranted by existing law or a nonfrivolous argument for extending, modifying, or reversing the law; (ii) assertion that acts or events violated Michigan election law, when the acts and events (even if they occurred) did not; and (iii) failure to inquire into the requirements of Michigan election law. Plaintiffs' counsel advanced claims that were also not well-grounded in fact, as demonstrated by their (i) failure to present any evidentiary support for factual assertions; (ii) presentment of conjecture and speculation as evidentiary support for factual assertions; (iii) failure to inquire into the evidentiary support for factual assertions; (iv) failure to inquire into evidentiary support taken from other lawsuits; and (v) failure to inquire into Ramsland's outlandish and easily debunked numbers.

(R. 172, Op. & Order, Page ID # 6991.)

Junttila does not advance any argument on appeal that the District Court erred in concluding that Plaintiffs' claims were meritless. The '[f]ailure to raise an argument in an appellate brief waives

the argument on appeal. *Rees v. W.M. Barr & Co., Inc.*, 736 F. App'x 119, 124 (6th Cir. 2018). Junttila has thus waived any argument that the court erred in concluding the first element was met.

### 2. Junttila knew or should have known that Plaintiffs' claims were meritless.

The second element for an award of sanctions under the court's inherent authority is that counsel knew or should have known that the claims advanced were meritless. *Big Yank Corp.*, 125 F.3d at 313.

The District Court concluded that "Plaintiffs' counsel knew or should have known that [their] claims and legal contentions were not well-grounded in law or fact," again incorporating its preceding analysis under Rule 11. (R. 172, Op. & Order, Page ID # 6991.)

Junttila does not advance any argument on appeal that the District Court erred in concluding that Junttila knew or should have known that the legal claims advanced were meritless. As a result, Junttila has waived any argument that the court erred in concluding the second element was met. *Rees*, 736 F. App'x at 124.

### 3.     The lawsuit was filed for an improper purpose.

The third element for an award of sanctions under the court's inherent authority is that the motive for filing the suit was for an improper purpose. *Big Yank Corp.*, 125 F.3d at 313.

Again, a federal court possesses inherent power to sanction parties and their counsel for misconduct where a party litigates in bad faith, vexatiously, wantonly, or for oppressive reasons. *Chambers,* 501 U.S. at 45-47. The power extends to a full range of litigation abuses, both inside and "beyond the courtroom." *Id*. at 45-46, 57.  Sanctions are appropriate where the moving party demonstrates "[i]mproper purpose," including harassment and conduct that is "tantamount to bad faith," "even in the absence of a specific finding of bad faith." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 519 (6th Cir. 2002).  "[T]he 'mere fact that an action is without merit does not amount to bad faith.' " *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 753 (6th Cir. 2010) (quoting *Miracle Mile Assocs. v. City of Rochester*, 617 F.2d 18, 21 (2d Cir. 1980)).  Rather, there must be "something more," like fraud on the court, improper use of the court, harassment, delay, or disruption of litigation.  *Id*. at 753-54.

Here, the District Court concluded that "Plaintiffs and their counsel filed this lawsuit for improper purposes." (R. 172, Op. & Order, Page ID # 6991.) The District Court incorporated its analysis under Rule 11, where the court likewise determined that Plaintiffs' counsel had acted with improper purpose. *Id*., Page ID # 6976-6990. In short, the court concluded that conduct by counsel, including statements made publicly or in other litigation, the failure to conduct a reasonable inquiry into the underlying factual assertions, the failure to inform the court and the parties of a faulty affidavit, and counsels' statements at the hearing that they would file the same case all over again, demonstrated that the principal purpose for filing the lawsuit was not to press meritorious legal arguments, but to use the court for the improper purpose of advancing political arguments. *Id.*

Junttila argues that she did not act in bad faith or engage in any misconduct that would support sanctions.

She argues that she only functioned as an appellate attorney in this case by filing a notice of appeal and taking other appellate actions, and that the District Court cannot sanction her for taking an appeal. (ECF No. 28, Page ID # 29.) She cites *Webster v. Sowders*, 846 F.2d

1032, 1040 (6th Cir. 1988) and *Nieves v. City of Cleveland*, 153 F. App'x

349, 354 (6th Cir. 2005) in support of her argument.  But as Junttila

acknowledges, the District Court confirmed that it was not sanctioning

any counsel for "conduct that occurred on appeal."  (R. 172, Op. &

Order, Page ID # 6992.)

> As to bad faith or misconduct, Junttila argues that:

> There was nothing in the factual record showing that
> Appellant did anything to advance either pleading or the
> claims set forth in them. Beyond her filing a post judgment
> appearance and notice of appeal, she had no control or
> management over the litigation.

(ECF No. 28, Page ID # 32.)  But while Junttila did file the appeal to

this Court, she also performed work in the case before the District

Court.  In its Rule 11 analysis the court recognized that Junttila did not

sign a pleading but that she had filed other papers:

> Junttila [ ] did sign and docket subsequently filed motions,
> briefs, or other papers in which she and Plaintiffs' remaining
> attorneys advocated the claims asserted in their pleadings.
> (See, e.g., ECF No. 85 at Pg ID 3896-3906); see also Fed. R.
> Civ. P. 11(b) (indicating that counsel "present[s] to the court
> a pleading, written motion, or other paper" by, inter alia,
> "signing," "filing," or "later advocating it") (emphasis added).

(R. 172, Op. & Order, Page ID # 6915, n 13.)  Contrary to her argument,

Junttila did not simply act as appellate counsel, she participated as

counsel before the District Court thereby advancing Plaintiffs' meritless

27

claims.  The fact that she may not have had control or management
over the litigation does not excuse her apparently willing participation
in maintaining this action for an improper purpose, as the District
Court concluded.

Junttila further argues that the District Court erred by not
analyzing each attorney's individual conduct in connection with each
ground.  (ECF No. 28, Page ID # 32.)  Junttila cites *In re Ruben*, 825
F.2d 977, 991 (6th Cir. 1987), in support of her argument.

In *Ruben*, the plaintiff and her attorney were sanctioned under §
1927, the court's inherent authority, Rule 11, and another statute.
*Ruben*, 825 F.2d at 982.  The Court concluded that sanctions against
the plaintiff had to be reversed, principally because she did not have an
adequate opportunity to be heard.  *Id.* at 985.  The Court also reversed
an order granting costs for an assessment of the plaintiff's ability to
pay.  *Id.* at 987.  Turning to the attorney, the Court noted "the basis for
the district judge's sanction against [the attorney] [was] not clearly
delineated." *Id.* at 990.  The Court ultimately concluded that the
"portion of the sanction attributable to [the attorney's] alleged
misconduct must be reconsidered by the district judge with more

exacting scrutiny." *Id.* This appeared to be because some of the problems identified with the litigation by the district court involved other attorneys. "Discrete acts of vexatious conduct should be identified and a determination made whether they were done in bad faith or, even if bad faith was not present, whether they multiplied the proceedings pursuant to 28 U.S.C. § 1927." *Id.* The Court concluded that "[b]ecause the district judge did not analyze the impact upon defendants of discrete acts of claimed misconduct, remand is necessary to allow the district judge to make such a determination." *Id.*

*Ruben* simply requires that the imposition of sanctions be tied to specific findings of sanctionable conduct. It does not stand for the proposition that courts cannot sanction attorneys who, as a collective, engage in sanctionable conduct, without making individualized determinations as to each attorney.

Here, the District Court made findings. The court observed the underlying case first-hand, heard six hours of argument on the sanctions motions, invited supplemental briefing, and issued a 110-page opinion detailing its findings and conclusions. *See, e.g., Bawle v. Rockwell Intern. Corp.*, 79 Fed Appx 875, 879 (6th Cir. 2003)

(concluding that district court had make sufficiently specific findings to support imposition of sanctions).

It is plain from the court's opinion, particularly the court's discussion of Rule 11 sanctions, that it determined all Plaintiffs' counsel—those whose signatures were electronically affixed to filings (Powell, Rohl, Hagerstrom and Junttila) and those who were listed as "of counsel" (Wood, Haller, Kleinhendler, Johnson and Newman)—were equally responsible for the sanctionable conduct based on their participation in the case. (R. 172, Page ID # 6895, 6899, 6901-6902, 6914-6926.) Indeed, thereafter the District Court refers to "Plaintiffs' attorneys" throughout the opinion, including in its determination that Rule 11 was violated, which determination the court incorporated in its conclusion that sanctions pursuant to its inherent authority were warranted. *Id.*, Page ID # 6942-6991.

Junttila complains that she did not make some of the statements the District Court found objectionable, including references to *U.S. v. Throckmorton*, 98 U.S. 61 (1878), and that supported the court's finding that the litigation was brought for an improper purpose. (ECF No. 28, Page ID # 34-35.) *See also* (R. 172, Op. & Order, Page ID # 6976-6990.)

She argues that "lumping" her in with the other counsel was a "gross abuse of discretion" because:

> Appellant merely filed an appearance and a notice of appeal *after* the underlying litigation had been dismissed; (1) she never mentioned *Throckmorton* to or in the trial court, (2) another attorney's citation of it should have no bearing on her, and (3) whatever anyone else said about it outside of the litigation should not have been considered by the trial court or influenced its decision to sanction Appellant or any of the other lawyers.

(ECF No. 28, Page ID # 35.)  The State Defendants note that Junttila filed her appearance and notice of appeal on December 8, which was *before* she filed the voluntary dismissals in this case on January 14. Defendants also note that the District Court did not cite to the *Throckmorton* references in her "improper purpose" analysis. (R. 172, Op. & Order, Page ID # 6976-6990.)  However, it is correct that the court referenced statements made by other counsel, for instance Powell, in concluding "Plaintiffs' legal team" had filed and maintained the litigation for an improper purpose.

But again, Junttila became part of the collective conduct the court found improper after she appeared in the case on December 8. Regardless, this Court "may uphold the district court's sanction ruling notwithstanding the absence of specific findings if there is sufficient

evidence in the record to support its ruling." *United States ex rel.*
*Tingley v. PNC Fin. Servs. Grp., Inc.*, 75 F. App'x 342, 345 (6th Cir.
2017) (citation omitted).  As discussed above, Junttila participated in
perpetuating this case by forcing Defendants to file motions to dismiss
on December 22, to which she then asked for more time to respond to,
before turning around and voluntarily dismissing the case. And she did
this despite having represented to the Supreme Court (and to the State
Defendants as parties both here and there) that Plaintiffs' claims would
be moot after December 14.  Given the significance of the claims made
in this case—that the state's presidential election was a fraud—and the
pall it cast over Michigan's electoral process, the District Court did not
abuse its discretion in imposing sanctions against Junttila for her
willing participation in this case.

Finally, to the extent Junttila complains of the award of attorney
fees, there is no dispute that a court can award attorney fees to the
moving party as a sanction pursuant to a court's inherent authority.
*Chambers*, 501 U.S. at 45-46.  In *Goodyear Tire & Rubber Co. v. Haeger*,
the Supreme Court clarified that "a federal court's inherent authority to
sanction a litigant for bad-faith conduct by ordering it to pay the other

side's legal fees ... is limited to the fees the innocent party incurred solely because of the misconduct." 137 S. Ct. 1178, 1183-84 (2017).  In other words, "[t]he complaining party ... may recover 'only the portion of [her] fees that [s]he would not have paid but for' the misconduct." *Id.* at 1187 (quoting *Fox v. Vice*, 563 U.S. 826, 836 (2011)).

Here, the District Court granted the State Defendants motion and as a sanction pursuant to its inherent authority ordered Plaintiffs' counsel to pay the State Defendants' attorney fees reasonably incurred in defending this action.  (R. 172, Op. & Order, Page ID # 6996-98.) And the court ordered that Plaintiffs' counsel were jointly and severally responsible for paying the State's fees, *id.*, Page ID # 6998, which this Court has found appropriate in sanctions cases, *see Dearborn Street Bldg. Associates, L.L.C. v. Huntington Nat. Bank*, 411 Fed. Appx 847, 852 (6th Cir. 2011).

As the District Court observed in its subsequent opinion awarding attorney fees, no counsel objected to the reasonableness of the State Defendants' requested fees of $21,964.75.  (R. 179, Op. & Order, Page ID # 7143.)  And the court awarded the State its requested fees to be paid jointly and severally by all counsel.  *Id.*, Page ID # 7168.

33

In awarding fees, the District Court recognized that an award pursuant to the court's inherent authority is intended to compensate the moving party for only work required due to the misconduct.  *Id*., Page ID # 7145-46.  In its sanctions opinion and order, the District Court concluded that the instant lawsuit was frivolous or improper from its inception.  (R. 172, Page ID # 6996.)  As a result, the State Defendants were entitled to an award reflecting all costs incurred in defending the action below, which is what the State requested in its notice and affidavits of cost, (R. 173, State's Notice, Page ID # 7000, 7007-7017), and what the court awarded.

The court did not abuse its discretion or otherwise error in awarding the State Defendants their requested fees pursuant to its inherent authority to sanction counsel.

**II.    The District Court did not abuse its discretion in awarding sanctions to the State Defendants pursuant to 28 U.S.C. § 1927 where it found that Junttila had unreasonably and vexatiously multiplied the litigation.**

    **A.    Standards for granting sanctions under 28 U.S.C. § 1927.**

28 U.S.C. § 1927 provides that "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be

required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Under this statute, the attorney's subjective bad faith is not relevant because the court applies an objective standard, and "sanctions under section 1927 [are appropriate] when it determines that an attorney reasonably should know that a claim pursued is frivolous." *Salkil v. Mount Sterling Twp. Police Dep't,* 458 F.3d 520, 532 (6th Cir. 2006) (quoting *Jones v. Continental Corp.,* 789 F.2d 1225, 1230 (6th Cir.1986)). "Simple inadvertence or negligence, however, will not support sanctions under § 1927." *Salkil*, 458 F.3d at 532 (citing *Ridder v. City of Springfield,* 109 F.3d 288, 298 (6th Cir.1997).) " 'There must be some conduct on the part of the subject attorney that trial judges, applying collective wisdom of their experience on the bench could agree falls short of the obligations owed by a member of the bar to the court.' " *Id.* (quoting *Ridder*, 109 F.3d at 298, quoting *In re Ruben,* 825 F.2d 977, 984 (6th Cir. 1987)).

### B. The District Court properly applied these standards in granting sanctions pursuant to § 1927.

In its opinion and order, the District Court correctly set forth the standards applicable for granting sanctions pursuant to § 1927. (R.

172, Page ID # 6909-6910.)  In sum, the District Court concluded that

Plaintiffs' counsel violated § 1927 because their continued pursuit of

this litigation after December 14, 2021, the day Michigan's Presidential

electors voted and the day Plaintiffs' counsel stated in briefing it would

be become moot—was unreasonable and vexatious.  *Id.*, Page ID # 6936-

6941.  The court did not abuse its discretion in reaching this conclusion

because the facts and law supported that conclusion.

In denying Plaintiffs' emergency motion for declaratory and

injunctive relief, the District Court concluded that the Eleventh

Amendment barred Plaintiffs' claims, including their state-law claims;

that their claims were moot; that their claims were barred by laches;

that abstention applied; that Plaintiffs lacked standing to bring their

equal protection, Electors Clause and Elections Clause claims; and that

as a result Plaintiffs had no likelihood of succeeding on the merits of

their claims.  (R. 62, Op. & Order, Page ID # 3301-3328.)

In addressing mootness, the District Court observed, "[t]he time

has passed to provide most of the relief Plaintiffs request in their

Amended Complaint; the remaining relief is beyond the power of any

court." *Id.*, Page ID # 3307.  The court summarized the relief Plaintiffs

requested in their amended complaint:

> Plaintiffs ask the Court to: (a) order Defendants to decertify
> the results of the election; (b) enjoin Secretary Benson and
> Governor Whitmer from transmitting the certified election
> results to the Electoral College; (c) order Defendants "to
> transmit certified election results that state that President
> Donald Trump is the winner of the election"; (d) impound all
> voting machines and software in Michigan for expert
> inspection; (e) order that no votes received or tabulated by
> machines not certified as required by federal and state law
> be counted; and, (f) enter a declaratory judgment that mail-
> in and absentee ballot fraud must be remedied with a
> manual recount or statistically valid sampling. (ECF No. 6
> at Pg ID 955-56, ¶ 233.)

*Id.*, Page ID # 3308.  The court observed that "[w]hat relief [it] could

grant Plaintiffs is no longer available."  *Id.*  As the District Court

recognized, all 83 Michigan Counties and the Defendant Board of State

Canvassers had certified the election results, and Defendant Whitmer

had already certified Michigan's electors before Plaintiffs even filed

their lawsuit.  *Id.*  Further, the time had also run for challenging the

election based on voting equipment errors and for seeking a recount

under Michigan's statutory processes.  *Id.*, Page ID # 3309.  Indeed, the

former President or his campaign could have requested a recount under

Michigan Election Law, but neither did. Instead, Plaintiffs asked this

37

court to order one instead.  As the court noted, "[a]ny avenue for this Court to provide meaningful relief has been foreclosed," and thus "Plaintiffs' requested relief concerning the 2020 General Election is moot."  *Id.*, Page ID # 3309-3310.

The court rendered this decision on December 7, Junttila filed a notice of appeal to the Sixth Circuit on December 8, and then Plaintiffs" counsel did nothing to advance that appeal, indeed they never filed a brief.  (R. 64, Page ID # 3332.)  They waited three days and then filed their petition for certiorari on December 11, and then waited another seven days to move to expedite their petition before the Supreme Court.  That was four days after Michigan's electors had voted, an act Plaintiffs sought to enjoin.

And as the District Court observed in its opinion, in Plaintiffs' petition for certiorari, Plaintiffs and their counsel recognized that their claims would be moot absent expedited consideration by that Court.  They noted they sought "immediate preliminary relief . . . to maintain the status quo *so that the passage of time and the actions of [Defendants] do not render the case moot*, depriving [the Supreme] Court of the opportunity to resolve the weighty issues presented herein

38

and [Defendants] of any possibility of obtaining meaningful relief." (R. 105-2, Page ID # 4401, 4409) (emphasis added.)

Plaintiffs' counsel asked the Supreme Court to "exercise its authority to issue the writ of certiorari and stay the vote for the Electors in Michigan," to "stay or set aside the results of the 2020 General Election in Michigan," and to "stay the Electoral College Vote[.]" (*Id.*, pp 10, 15-16.) Similarly, they argued that "the Michigan results must be decertified, [and] the process for seating electors stayed[.]" (*Id.*, p. 17.) They requested an "injunction prohibiting the State Respondents from transmitting the certified results[.]" (*Id.*, p. 22.) In their conclusion, they asked the Supreme Court to enter an emergency order "instructing [Defendants] to de-certify the results of the General Election for the Office of President," or alternatively to order Defendants "to certify the results of the General Election for Office of the President in favor of President Donald Trump." (*Id.*, p 31.) Plaintiffs expressly acknowledged to that Court that "[o]*nce the electoral votes are cast, subsequent relief would be pointless*," and "*the petition would be moot.*" (*Id.*, pp. 7, 15) (emphasis added.)

Thus, to the extent this case was not already moot as the District Court concluded on December 7, Plaintiffs and their counsel knew that this case would be moot once the electors voted on December 14. Yet, that date came and went with no acknowledgement by Plaintiffs and their counsel to Defendants, to the District Court, or the Supreme Court. As a result, the State Defendants were required to follow through with filing a first responsive pleading to Plaintiffs' amended complaint on December 22. Defendants filed a motion to dismiss in lieu of answering. (R. 70, Defs' Mot. & Br., Page ID # 3350-3428.)

In response to defense counsel's e-mail to Plaintiffs' counsel seeking concurrence in their motion to dismiss, Junttila responded that since "[t]his case is on appeal to the Sixth Circuit and to the United States Supreme Court," Plaintiffs' counsel was "not in a position to respond to [the request for concurrence] until these appeals are decided," and counsel did "not believe [the District Court] has jurisdiction to consider [Defendants'] motion while the case is on appeal." (R. 105-3, Page ID # 4432.) As the District Court observed, (R. 172, Page ID # 6939, n 27), this statement by Junttila was incorrect since no stay had been entered by that court, by this Court, or by the

Supreme Court in this case.  In fact, Plaintiffs did not move for a stay of this case in any court.  Plaintiffs' counsel presumably realized their error as Junttila subsequently asked for an extension of time to respond to Defendants' motion on January 12, 2021, (R. 82), the day the response was due under the court rule.  *See* L.R. 7.1(e)(1)(B).  And then, two days later, Plaintiffs' counsel, through Junttila, filed the voluntary dismissal as to Defendants instead of responding—a month after the vote of the electors on December 14 and eight days after Congress voted.

Again, § 1927 sanctions are appropriate where "an attorney objectively 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.' " *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater,* 465 F.3d 642, 646 (6th Cir. 2006) (quoting *Ruben v. Warren City Sch.*, 825 F.2d 977, 984 (6th Cir. 1987)).  Such sanctions are intended to "deter dilatory litigation practices and to punish aggressive tactics that far exceed zealous advocacy." *Red Carpet Studios*, 465 F.3d at 646. Section 1927 has been interpreted "to impose a continuing duty upon attorneys to dismiss claims that are no longer viable." *Dahnke v.*

*Teamsters Local 695,* 906 F.2d 1192, 1201 n. 6 (7th Cir.1990).  An

attorney who is sanctioned pursuant to this statute must "personally

satisfy the excess costs attributable to his [or her] misconduct."  *Red*

*Carpet Studios*, 465 F.3d at 646.

Here, Plaintiffs' case was not well-taken from its inception.[22]  As

the District Court noted in its December 7 opinion, Plaintiffs' requested

relief was nearly moot before their case was even filed.  (R. 62, Page ID

# 3307-3310).  And if that was not true by December 7, it was certainly

true by December 14 after Michigan's electors had voted.  As discussed

above, Plaintiffs' counsel, including Junttila, represented to this

Nation's highest court that their claims would be moot after Michigan's

electors voted.  But still, Plaintiffs and their counsel did not dismiss this

case, thereby necessitating the filing of motions to dismiss on December

22.  Of course, Defendants did so only to have Plaintiffs' counsel,

including Junttila, voluntarily dismiss the case when it came time for

---

[22] The State Defendants argued below that Plaintiffs' counsel
vexatiously maintained and multiplied this proceeding from the filing of
their amended complaint forward.  (R. 105, Page ID # 4359-4368).  *See
Ridder,* 109 F.3d at 297-299 (holding there that attorney could be liable
for vexatious conduct that began with "the filing of the complaint"). The
District Court, however, did not go that far in its opinion.

their response.  Again, by refusing to timely dismiss this case as moot, Plaintiffs' counsel unreasonably and vexatiously multiplied the proceedings and caused unnecessary expense to the State Defendants.

Junttila argues that she did not engage in any conduct that vexatiously multiplied the proceeding.  (ECF No. 28, Page ID # 28.)  She again argues that she acted as appellate counsel and played only a minor role after appearing in case on December 8.  *Id.*, Page ID # 28-29. But as discussed above, Plaintiff did more than appellate work in the litigation.  In fact, she denied concurrence in the State Defendants' motion to dismiss, based on faulty reasoning, thereby compelling the State to file its motion to dismiss.  (R. 105-3, Page ID # 4432.)  To the extent she suggests there is no bad conduct here because the duration of this case was relatively short, she cites no case for the proposition that the duration of a case must be lengthy and pleadings numerous for sanctions to issue under § 1927.  Indeed, election cases are often time-sensitive and litigated faster than other civil suits.

Junttila further argues, as she did with respect to sanctions under the court's inherent authority, that the district court erred in not making specific findings of vexatious conduct as to her. (ECF No. 28, Pls

43

Br, Page ID # 32-36.)  Again, the State Defendants agree that a court

must make findings in determining that a sanctions award is

appropriate.  *In re Ruben*, 825 F.2d at 991.  The District Court satisfied

this standard.  The court concluded that, based on Plaintiffs' counsels'

own assertions in briefing, including to the U.S. Supreme Court, a brief

Junttila signed, Plaintiffs' claims became moot as of December 14, 2020.

(R. 172, Op. & Order, Page ID # 6936-6937.)  But counsel did not

dismiss Plaintiffs' claims, which caused all Defendants to have to file

first responsive pleadings, which " 'caused [the Defendants] and the

[C]ourt to waste resources' in the meantime."  *Id*., Page ID # 6940

(quoting *Morris v. City of Detroit Water & Sewage Dep't*, 20 F. App'x

466, 468 (6th Cir. 2001); *see also Andretti v. Borla Performance Indus.,

Inc*., 426 F.3d 824, 835 (6th Cir. 2005) (affirming impositions of

sanctions where attorney "refus[ed] to voluntarily dismiss the count and

forc[ed] [opposing counsel] to pursue a dispositive motion in order to

have the claim dismissed").  As a result, the court found "that Plaintiffs'

counsel unreasonably and vexatiously multiplied the proceedings in this

case and their arguments to the contrary are unavailing."  (R. 172, Op.

& Order, Page ID # 6941.)

It is plain from the court's opinion that it determined all Plaintiffs' counsel were equally responsible for the sanctionable conduct. Because the District Court made findings to support its determination that all counsel for Plaintiffs were equally responsible for vexatiously multiplying the proceedings below. And regardless, this Court may affirm so long as there "is sufficient evidence in the record to support [the court's] ruling." *United States ex rel. Tingley*, 75 F. App'x at 345. Here, as discussed, there is sufficient evidence in the record of Junttila's specific participation in, and unreasonable extension of, this case.

Finally, to the extent that Junttila complains that the District Court should have itemized or parsed out costs and fees related to the vexatious conduct under § 1927, the court did not err.

The District Court ordered that "Plaintiffs' attorneys shall jointly and severally pay the fees and costs incurred by the State Defendants and the City of Detroit *to defend this action*." (R. 172, Op. & Order, Page ID # 6998) (emphasis added). The State Defendants' notice and fee affidavits reflected costs incurred in defending the action below. (R. 173, State's Notice, Page ID # 7000, 7007-7017.) And the court awarded

45

the State the full amount of the requested fees to be paid jointly and severally by all counsel.  (R. 179, Op. & Order, Page ID # 7168.)

It is true that the State Defendants and the District Court did not itemize or parse the costs that would have been payable under § 1927. But because the court granted sanctions pursuant to its inherent authority in favor of the State Defendants, the State Defendants were entitled to the modest amount they sought, which subsumed any smaller subset owed under § 1927.  This is likely why the District Court did not require the State Defendants and the City of Detroit to separately account for costs associated with Plaintiffs' counsels' misconduct under § 1927.  Under these circumstances, the court did not abuse its discretion or otherwise err in granting sanctions under § 1927.

Here, counsels', including Junttila's, zealousness clearly clouded their legal judgment and led them to engage in tactics that fell far short of the obligations they owed the District Court as licensed attorneys. *Ridder*, 109 F.3d at 298.  As a result, the District Court properly sanctioned Junttila, along with attorneys Powell, Rohl, and Hagerstrom, as requested by the State Defendants and the remaining Plaintiffs' counsel as well under § 1927.

46

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, Defendants-Appellees Governor Gretchen Whitmer and Secretary of State Jocelyn Benson respectfully request that this Court affirm the District Court's August 25, 2021, opinion and order granting sanctions in favor of Defendants-Appellees and its December 2, 2021, opinion and order awarding Defendants-Appellees $21,964.75 in attorneys fees.

Respectfully submitted,

*/s/Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-
Appellees Gretchen Whitmer &
Jocelyn Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov

Dated:  June 24, 2022

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of

Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because, excluding

the part of the document exempted by Federal Rule of Appellate

Procedure 32(f), this brief contains no more than 13,000 words.  This

document contains 9,092 words.

2.    This document complies with the typeface requirements of

Federal Rule of Appellate Procedure 32(a)(5) and the type-style

requirements of Federal Rule of Appellate Procedure 32(a)(6) because

this document has been prepared in a proportionally spaced typeface

using Word 2013 in 14-point Century Schoolbook.

*/s/ Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-
Appellees Gretchen Whitmer &
Jocelyn Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov

## CERTIFICATE OF SERVICE

I certify that on June 24, 2022, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record (designated below).

*/s/ Heather S. Meingast*
Heather S. Meingast (P55439)
Erik A. Grill (P64713)
Assistant Attorneys General
Counsel of Record
Attorneys for Defendants-
Appellees Gretchen Whitmer &
Jocelyn Benson
P.O. Box 30736
Lansing, Michigan 48909
517.335.7659
meingasth@michigan.gov

# DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

Defendants-Appellees, per Sixth Circuit Rule 28(a), 28(a)(1)-(2),

30(b), hereby designated the following portions of the record on appeal:

| Description of Entry | Date | Record Entry No. | Page ID No. Range |
|---|---|---|---|
| Complaint | 11/25/2020 | 1 | 1-830 |
| First Amended Complaint | 11/29/2020 | 6 | 872-1831 |
| Pls' Emergency Mtn Declaratory and Permanent Injunctive Relief | 11/29/2020 | 7 | 1832-1849 |
| Pls' Mtn File Affidavits Under Seal | 11/29/2020 | 8 | 1850-1856 |
| State Defs' Response Opp Pls' Emergency Mtn TRO | 12/02/2020 | 31 | 2162-2458 |
| DNC Opp Pls' Mtn Seal | 12/02/2020 | 32 | 2459-2465 |
| City of Detroit Opp Pls' Mtn Seal | 12/02/2020 | 34 | 2470-2478 |
| State Defs' Opp Pls' Mtn Seal | 12/02/2020 | 35 | 2479-2485 |
| DNC Opp Pls' Mtn Declaratory, Emergency & Permanent Injunctive Relief | 12/02/2020 | 36 | 2486-2738 |
| Davis Response Pls' Mtn TRO | 12/02/2020 | 37 | 2739-2750 |

| City of Detroit Response Pls' Mtn Declaratory, Emergency & Permanent Injunctive Relief | 12/02/2020 | 39 | 2808-2933 |
|---|---|---|---|
| Pls' Reply to Responses in Opposition to Mtn for Declaratory, Emergency & Permanent Injunctive Relief | 12/03/2020 | 49 | 3068-3152 |
| Pls' Reply to Responses to Mtn to Seal | 12/03/2020 | 50 | 3153-3164 |
| Opinion & Order Denying Pls' Emergency Mtn Declaratory, Emergency & Injunctive Relief | 12/07/2020 | 62 | 3295-3330 |
| Pls' Notice of Appeal of Opinion (R. 62) | 12/08/2020 | 64 | 3332 |
| State Defendants' Mtn to Dismiss | 12/22/2020 | 70 | 3350-3428 |
| City of Detroit Mtn for Sanctions, Disciplinary Action, Disbarment Referral and Referral to State Bar Disciplinary Bodies | 01/05/2021 | 78 | 3616-3836 |
| Pls' Mtn for Extension of Time to Respond to Defs' & Intervenors' Mtns to Dismiss & for Sanctions | 01/12/2021 | 82 | 3857-3869 |
| Defs Whitmer & Benson Concurrence in City of | 01/14/2021 | 84 | 3879-3882 |

| | | | |
|---|---|---|---|
| Detroit's Motion for Sanctions | | | |
| Pls' Notice of Voluntary Dismissal of Benson | 01/14/2022 | 86 | 4030-4032 |
| Pls' Notice of Voluntary Dismissal of City of Detroit | 01/14/2022 | 87 | 4033-4035 |
| Pls' Notice of Voluntary Dismissal Whitmer | 01/14/2022 | 88 | 4036-4038 |
| Pls' Notice of Voluntary Dismissal of Democratic National Committee | 01/14/2022 | 89 | 4039-4041 |
| Pls' Notice of Voluntary Dismissal of Board of State Canvassers | 01/14/2022 | 90 | 4042-4044 |
| Pls' Notice of Voluntary Dismissal MI Democratic Party | 01/14/2022 | 91 | 4045-4047 |
| Pls' Mtn Voluntary Dismissal Intervenor-Defendant Davis | 01/17/2022 | 92 | 4048-4057 |
| Defs Whitmer & Benson Mtn for Sanctions | 01/28/2021 | 105 | 4334-4450 |
| Pls' Opposition State Defs' Mtn for Sanctions | 02/11/2021 | 112 | 4600-4731 |
| Defs Whitmer & Benson Reply Support Mtn for Sanctions | 03/11/2021 | 116 | 4741-4773 |

| Defs Whitmer & Benson Mtn for Leave to File Supplemental Briefing | 04/06/2021 | 118 | 4778-4991 |
|---|---|---|---|
| Pls' Response to Defs Whitmer & Benson Supplemental Brief | 04/23/2021 | 120 | 4995-5067 |
| Order (re supplemental briefs) | 07/12/2021 | 150 | 5269 |
| Rohl, Johnson, Kleinhendler, Powell, Haller & Hagerstrom Supplemental Brief | 07/26/2021 | 161 | 5794-6097 |
| Junttila Supplemental Brief | 07/28/2021 | 165 | 6562-6582 |
| Defs Whitmer & Benson Response to Pls' Counsel Supplemental Briefs | 08/04/2021 | 166 | 6583-6674 |
| Opinion & Order (re sanctions) | 08/25/2021 | 172 | 6890-6999 |
| Defs Whitmer & Benson Notice Regarding Sanctions Award | 09/08/2021 | 173 | 7000-7017 |
| Opinion & Order (re sanctions) | 12/02/2021 | 179 | 7142-7168 |
| Rohl, Johnson, Kleinhendler, Powell, Haller & Hagerstrom's Notice of Appeal | 12/03/2021 | 182 | 7174-7176 |
| Junttila's Notice of Appeal | 01/03/22 | 187 | 7182-7184 |

| Affidavit of Emily P. Newman | 02/25/2022 | 196 | 7321-7348 |
|---|---|---|---|
| Affidavit of Julia Z. Haller | 02/25/2022 | 197 | 7349-7363 |
| Affidavit of Gregory J. Rohl | 02/25/2022 | 198 | 7364- 7386 |
| Affidavit of L. Lin Wood | 02/25/2022 | 199 | 7387-7395 |
| Affidavit of Brandon C. Johnson | 02/25/2022 | 200 | 7396-7410 |
| Affidavit of Scott Hagerstrom | 02/25/2022 | 201 | 7411-7422 |
| Affidavit of Sidney Powell | 02/25/2022 | 202 | 7423-7447 |
| Affidavit of Stafanie Lambert Junttila | 02/25/2022 | 203 | 7448-7449 |
| Affidavit of Stafanie Lambert Junttila | 02/28/2022 | 204 | 7450-7451 |